**AMERICAN BRAKE SHOE & FOUNDRY CO. v. INTERBOROUGH RAPID TRANSIT CO. (two cases).**

**CENTRAL HANOVER BANK & TRUST CO. v. MANHATTAN RY. CO. et al.**

District Court, S. D. New York.

June 18, 1942.

Simpson, Thacher & Bartlett, of New York City (Hamilton C. Rickaby, of New York City, of counsel), for petitioner.

William C. Chanler, Corp. Counsel, of New York City (Leo Brown, of New York City, of counsel), for City of New York.

Chester W. Cuthell, of New York City (Robert W. Maloney, Jr., of New York City, of counsel), for Transit Commission.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Edwin S. S. Sunderland and Chester F. Leonard, both of New York City, of counsel), for J. P. Morgan and others.

Shearman & Sterling, of New York City (Guy Cary and Clifford M. Bowden, both of New York City, of counsel), for J. Herbert Case and others.

Wright, Gordon, Zachry, Parlin & Cahill, of New York City (Boykin C. Wright, Clifton Murphy, and Daniel James, all of New York City, of counsel), for Van S. Merle-Smith and others.

HULBERT, District Judge.

Ten years ago the American Brake Shoe and Foundry Company filed a creditors bill in equity in this court against the Interborough Rapid Transit Company, for which receivers were appointed, and from time to time the court granted leave to other interested parties to intervene, including the Manhattan Elevated Railway Company and representatives of its Mortgage Bonds and Guaranteed Stockholders, and an independent receiver was likewise appointed for the Manhattan Elevated Railway Company.

Prolific litigation followed and after prodigious efforts a plan of unification was arrived at and approved by the court pursuant

to which the City of New York acquired the corporate control of the Interborough and the Manhattan (which corporations have since been dissolved) and assumed, of course, the payment of their respective liabilities, in accordance with the terms of the plan which, so far as material to the consideration of this application, provided that the City would issue its corporate stock in the amount of $500 in exchange for each $1,000 Second Mortgage Bond of the Manhattan Elevated Company, provided such deposit were made within the stipulated exchange period, or in the alternative, would pay a lump sum in cash amounting to $394.68.

Paul E. Manheim owning, or acting as attorney in fact for other owners of Manhattan Railway Company Second Mortgage Bonds in the aggregate principal amount of $484,000 participated in and was represented at various hearings held in this court, particularly with respect to the plan of unification and readjustment. He contended that the plan did not meet the required standards of fairness and equity. His contentions were overruled by the court which entered orders on March 15, 1940, finding the plan fair and equitable and approving the procedure by which the rights of the holders of Manhattan Second Mortgage Bonds had been determined, and on June 12, 1940, directing consummation of the plan.

Manheim did not assent to the plan and deposit his bonds pursuant thereto. Instead, he appealed to the Circuit Court of Appeals (Second Circuit) with results adverse to himself (122 F.2d 454) and his petition to the United States Supreme Court for certiorari was denied Feb. 2, 1942. Manheim v. Merle, 315 U.S. 801, 62 S.Ct. 625, 86 L.Ed. 1201. He now applies for an order directing the acceptance of the $484,000 principal amount of Manhattan Second Mortgage Bonds *under the Plan,* nunc pro tunc, upon such terms and conditions with respect to adjustment of interest, or otherwise, as to this court may seem equitable and proper.

The petitioner contended that the plan should not have discriminated between assenters and non-assenters, but both the District Court and the Circuit Court of Appeals ruled to the contrary.

It is also his contention that he was entitled, as a matter of right, to an order by the District Court providing that if his appeals were unsuccessful, the deposit would, nevertheless, be permitted. He made such a motion, orally. While the District Judge did not specifically rule upon it, it was, in effect, disposed of adversely to Manheim by the order which the court did make, and Judge Swan, writing for the Circuit Court of Appeals, specifically stated at page 461, of 122 F.2d: "The orders and decrees appealed from limiting his recovery to $394.-68 per bond are affirmed."

On Oct. 30, 1940, an order was made approving a cash deposit by the City of New York with the New York Trust Company as settlement fund agent, to take care, inter alia, of Manheim's bonds, unless he won his appeals, and that order was one from which he unsuccessfully appealed. However, he seeks relief based upon the discussion which occurred at a hearing on Oct. 17, 1940, and the resulting order of Oct. 30, 1940.

Counsel for the Transit Commission had classified the non-assenters to include, first, those who reside abroad and could not send in their securities because of the war, and, second, Manheim and Salomon. With reference to the second classification, Mr. Cuthell had the following to say:

"In the second group of securities, represented by Mr. Beer and Mr. Salomon, they have two committees on it. Mr. Beer says just this: everybody else has deposited here to the extent, in his issue, of over 88 per cent. Let me go ahead and appeal, try to get more, but if I don't succeed then I will get the Settlement Fund price.

"Your Honor could not have put through a plan if you had permitted people to either deposit or not deposit, but in any event they would get the same amount of money. That could not have been done. Nobody would have done anything more than carry on a continuing option to get this plan price."

At the end of Mr. Cuthell's statement, I made the following observation: "Mr. Cuthell, I am not so much concerned about the man who knows of the existence of these proceedings and can make an election, as I am with respect to those who, by circumstances that are beyond their control, may either not know about it or may, in such a situation, be entirely helpless."

It is the contention of the petitioner that he comes within the latter class. There is no merit in that contention. It seemed to

me then that Manheim had made his election. At all events, I feel myself constrained by the action of Judge Patterson and the affirmance by the Circuit Court of Appeals to deny the motion. Settle order on notice.